**UNITED STATES DISTRICT COURT**
**FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUTH ANN TURCHAN, )<br><br>Plaintiff )<br><br>v. )<br><br>RECEIVABLE MANAGEMENT )<br>SERVICES and NCO FINANCIAL )<br>SYSTEMS, INC. d/b/a NCO PORTFOLIO )<br>MANAGEMENT, )<br><br>Defendants | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR**<br>**JURY TRIAL**<br><br>**(Unlawful Debt Collection Practices)** |

## COMPLAINT

RUTH ANN TURCHAN ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against RECEIVABLE MANAGEMENT SERVICES ("Defendant R.M.S.") and NCO FINANCIAL SYSTEMS, INC. d/b/a NCO PORTFOLIO MANAGEMENT ("Defendant NCO") (collectively "Defendants"):

### INTRODUCTION

1.    Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2.    Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court

- 1 -

PLAINTIFF'S COMPLAINT

without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3.      Defendants conduct business and each has an office in the State of Pennsylvania and therefore, personal jurisdiction is established.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.      Plaintiff is a natural person residing in Spring Lake, Michigan, 49456.

7.      Plaintiff is a person granted a cause of action under the FDCPA. See 15 U.S.C. §1692k(a) and Wenrich v. Cole, 2000 U.S. Dist. LEXIS 18687 (E.D. Pa. Dec 22, 2000).

8.      Defendant R.M.S. is a debt collection company with corporate headquarters located at 240 Emery Street, Bethlehem, Pennsylvania, 18015.

9.      Defendant NCO is a national debt collection company with corporate headquarters located at 507 Prudential Road in Horsham, Pennsylvania, 19044.

10.     Defendants are each a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

11.     Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties.

See 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress

additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  15 U.S.C. § 1692b.

14.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15.     Defendant R.M.S. and others it retained began in or around September 2010 and continued until March 2011 to constantly place harassing and abusive collection calls to Plaintiff, seeking and demanding payment for an alleged consumer debt of another person.

16.     Upon information and belief, Defendant R.M.S. was acting on behalf of Defendant NCO.

17.     Upon information and belief, the alleged debt Defendant R.M.S. was seeking to collect arose out of transactions, which were primarily for personal, family, or household purposes.

18.     Defendant R.M.S. and its employees harassed Plaintiff by making continuous calls to her home telephone number.

19.     Defendant R.M.S. would not identify who it was, but identified the debtor as Plaintiff's adult daughter, Melissa.

20.     Melissa does not reside with Plaintiff, nor was Plaintiff aware that Melissa owed any obligation to anyone.

21.     Every time Plaintiff spoke with Defendant R.M.S., she advised Defendant R.M.S. that the person they were looking for did not live with her, that Defendant R.M.S. had the wrong telephone number, and not to contact Plaintiff anymore.

22.     Plaintiff also informed Defendant R.M.S. that she was extremely sick with a chronic disease and Defendant R.M.S.'s telephone calls where causing her added stress.

23.     Despite Plaintiff's numerous requests not to contact her, Defendant R.M.S and others it retained still continued to contact Plaintiff in its attempts to collect a debt.

24.     Defendant R.M.S. placed repeated calls to Plaintiff's telephone almost every day, causing Plaintiff to receive, at times, more than two (2) collection calls a day and at times.

25.     The repetitive calls to Plaintiff were disturbing, harassing, and an invasion of privacy.

26.     Defendant R.M.S. failed to investigate or verify contact information prior to and after calling Plaintiff, and further, failed to update its records to avoid further harassment of Plaintiff.

27.     Each time Defendant R.M.S. called it would question Plaintiff about the whereabouts of Melissa.

28.     Only after months of contacting Plaintiff, Defendant R.M.S. advised Plaintiff that it was seeking to collect a debt alleged to be owed to NCO.

29.     Disturbed by the constant harassment, and uncertain what to do, Plaintiff reluctantly offered to settle the debt.

30.     Plaintiff offered $100.00 to put an end to the harassment; however, Defendant R.M.S. stated that Melissa's bill was for $530.74 and would only agree to settle the debt for $265.37.

PLAINTIFF'S COMPLAINT

31.     Reluctantly, Plaintiff provided Defendant R.M.S. with her credit card information and her account was charged $265.37 on March 15, 2011 by Defendant NCO.  A copy of Plaintiff's March - April 2011, credit card statement is hereto attached as Exhibit "A".

32.     Thereafter, on or around March 16, 2011, Plaintiff received a letter at her residence from Defendant R.M.S. addressed to her daughter, Melissa, seeking and demanding payment of the full $530.74 on behalf of Defendant NCO. A true and correct copy of the March 16, 2011, letter is attached hereto as Exhibit "B".

33.     The March 16, 2011 letter indicted that "[i]gnoring your obligations does not make them go away." See Exhibit B.

34.     This was confusing as Plaintiff had ignored Defendant, and in fact, had made payment to Defendant for a debt she did not owe, believing it would resolve this debt in full and put an end to the harassment she was enduring.

35.     Further, Defendant R.M.S.'s March 16, 2011, letter failed to set forth any rights Plaintiff and her daughter had under the FDCPA; specifically, Plaintiff was not alerted of her right to seek verification and/or dispute the debt. See Exhibit B.

## CONSTRUCTION OF APPLICABLE LAW

36.     The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

- 6 -

37.   The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. <u>Sprinkle v. SB&C Ltd.</u>, 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." <u>Johnson v. Riddle</u>, 305 F. 3d 1107 (10th Cir. 2002).

38.   The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. <u>See Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168 (11th Cir. 1985); <u>Graziano v. Harrison</u>, 950 F. 2d 107 (3rd Cir. 1991); <u>Swanson v. Southern Oregon Credit Service, Inc.</u>, 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." <u>Id.</u> The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. <u>Clomon</u>, 988 F. 2d at 1318.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

39.   In its actions to collect a disputed debt, Defendants violated the FDCPA in one or more of the following ways:

- 7 -

a.  Defendants violated of the FDCPA generally;

b.  Defendants violated § 1692b(2) of the FDCPA by informing Plaintiff of another person's debt, specifically her daughter, Melissa;

c.  Defendants violated § 1692b(3) of the FDCPA by calling Plaintiff more than once in connection for the collection of a debt for Melissa;

d.  Defendants violated § 1692c(b) of the FDCPA by communicating with Plaintiff about a debt allegedly owed by her daughter, Melissa;

e.  Defendants violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

f.  Defendants violated § 1692d(5) of the FDCPA, when it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff;

g.  Defendants violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

h.  Defendants violated § 1692g of the FDCPA by failing to send written notification, within five (5) days after its initial communication with Plaintiff, advising Plaintiff of her rights to dispute the debt or request verification of the debt;

i.  Defendants acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, RUTH ANN TURCHEN, respectfully pray for a judgment as follows:

PLAINTIFF'S COMPLAINT

a.  All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b.  Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.  All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

d.  Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, RUTH ANN TURCHAN, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

DATED: 04/29/11                    KIMMEL & SILVERMAN, P.C.

By: _____

Amy L. Bennecoff
Attorney ID # 202745
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: (215) 540-8817
Email: abennecoff@creditlaw.com

- 9 -

PLAINTIFF'S COMPLAINT